**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMANDO DIAZ, | Case No. 1:23-cv-00065 JLT EGC |
| Plaintiff, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | (Doc. 44) |
| CITY OF MERCED, et al., | |
| Defendants. | |

Armando Diaz alleges police officers wrongfully detained and arrested him in violation of his rights under the Fourth Amendment.  The defendants seek summary judgment of that claim. (Doc. 44.)  The motion is **DENIED** in light of genuine disputes of material fact that remain to be resolved at trial.

## BACKGROUND

The Court must assume at this stage that a factfinder would resolve disputes about the relevant evidence in Diaz's favor, as well as draw justifiable inferences in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The following summary takes the evidence from that point of view.

On a January evening several years ago, Diaz had arranged to pick up his daughter from his former partner, Rivas, at a house on a cul-de-sac in Merced, California.  (Doc. 46-3 at 1.)  She was not outside when he arrived, so he waited in his car on the street.  (*Id.* at 2.)  After several

1

minutes, Rivas came outside and told him that their daughter did not want to leave. (*Id.*) They spoke briefly, standing several feet apart. (*Id.*) Diaz eventually decided to go. (*Id.*) He went back to his car. (*Id.*) As he did, he noticed a police car was parked at the corner, a few houses away. (*Id.*) When he drove past it, the officer inside shone a light into his car and signaled for him to pull over. (*Id.*) He did. (*Id.*)

The officer's name was McComb. (Doc. 44-4 at 2) McComb had received a call for service about a "domestic violence incident" at a house at the end of the cul-de-sac. (*Id.*) He does not explain what evidence he had, if any, that might have suggested to him that Diaz had done anything wrong, let alone that Diaz had committed a domestic violence offense, but he stopped Diaz and asked what he was doing. (*Id.*) Diaz explained that he had come to pick up his daughter, as he and Rivas had planned, but that Rivas had not wanted to let her go with him, and Diaz said that he had decided to leave. (*Id.*)

McComb told Diaz to wait, and he stayed with Diaz by his car while another officer (de Jong) went to speak with Rivas. (*See* Doc. 46-3 at 2.) After a few minutes, McComb told Diaz to get out of the car, said he was under arrest, and put him in handcuffs in the back of a patrol car. (*Id.*; *see also* Doc. 44-4 Ex. 1 (body camera video).) De Jong had told McComb that there was probable cause to arrest Diaz for domestic violence. (Doc. 44-4 at 2.) McComb does not say what else de Jong told him, if anything, or why de Jong thought there was probable cause to suspect that Diaz had committed a domestic violence offense. (*See id.*) De Jong has not filed a declaration to explain what he heard or saw, either. The only person to explain is a third officer, Saelee, who arrived after Diaz was arrested. (*See* Docs. 44-5 at 2; 46-3 at 2.) Saelee claims he spoke to Rivas again, and he claims that Rivas told him that Diaz had shouted at her and had grasped her arm, leaving a bruise. (Doc. 44-5 at 2–3.) Saelee took a picture of her arm. It shows a few small red marks and, possibly, a faint bruise. (Doc. 445- at 5–8.)

Diaz was eventually charged with a violation of California Penal Code 273.5(a), a misdemeanor. (Doc. 46-4 at 16–18.) Before trial, he moved to suppress some of the evidence against him under Penal Code 1538.5, arguing the officers stopped and arrest him in violation of the Fourth Amendment to the U.S. Constitution. (*See* Docs. 46-1 at 12, 36–; 44-3 at 15–21.) The

2

court granted his motion in part based on its conclusion that McComb was wrong to stop and detain him; the court denied the motion in part because the officers had probable cause to suspect domestic violence based on Rivas's allegations and the possible bruising on her arm.  (*See* Docs. 44-3 at 20; 46-4 at 36–128.)  The Court suppressed Diaz's statements to McComb but not Rivas's statements to de Jong and Saelee.  (*See* Doc. 46-4 at 119–24.)  The case went to trial, and the jury reached a verdict of not guilty, both of the charge under section 273.5 of the state Penal Code and of a lesser included charge, under section 243.  (Docs. 46-4 at 20–21.)

Diaz then filed a motion under Penal Code 851.8.  (*See* Doc. 46-4 at 4–12.)  The state supreme court has said that section 851.8 was created "for the benefit of those defendants who have not committed a crime." *People v. Adair*, 29 Cal. 4th 895, 905 (2003) (quoting *People v. Scott M.*, 167 Cal. App. 3d 688, 699 (1985)).  It permits them to "show that the state should never have subjected them to the compulsion of the criminal law—because no objective factors justified official action." *Id.* (quoting *Scott M.*, 167 Cal. App. 3d at 700).  If they can meet that standard, they can "purge the official records of any reference to such action." *Id.* (quoting *Scott M.*, 167 Cal. App. 3d at 700).  The court granted Diaz's motion.  (Doc. 46-4 at 266–67.)  It ordered the state and the police department to seal and eventually to destroy the records of his arrest.  (*See id.*)

Diaz then filed a federal civil rights lawsuit against the City of Merced and the three officers (McComb, DeJong and Saelee) in this Court.  (Doc. 1)  He asserts claims under 42 U.S.C. § 1983 for unreasonable seizure and excessive force in violation of the Fourth Amendment, and he asserts claims under state law for battery, negligence, intentional infliction of emotional distress, and violations of the Tom Bane Civil Rights Act.  (*Id.*)  The defendants move for partial summary judgment of the first claim only.  (Doc. 44.)  The motion is fully briefed, and the court determined that oral arguments were not necessary.  (*See* Docs. 44-1, 46–48.)  Under the well-known provisions of Federal Rule of Civil Procedure 56(a), the question is whether there is any "genuine dispute as to any material fact" and if not, whether the defendants are "entitled to judgment as a matter of law."

///

3

**PRECLUSION**

The defendants first argue that the state court's pretrial decision is the decisive and final word on whether the officers had probable cause, even in this follow-on federal case. (Docs. 44-1 at 6–7; 48 at 5.) To be clear, the defendants limit this argument to probable cause and the arrest; they set Diaz's initial detention to the side. (*See* Doc. 44-1 at 1, 5–7.) This limitation creates an awkward juxtaposition. On the one hand, the defendants argue that the state court's decision is the last word when it comes to probable cause, but then, on the other hand, they ask this Court to decide that McComb had reasonable suspicion to stop and detain Diaz, contrary to the state court's pretrial ruling at the same hearing. (*See id.* at 5.) In any event, it is Diaz's position that none of state court's pretrial decisions is decisive or controlling on any relevant issue. (*See* Doc. 46 at 11–12.)

The legal terminology for these types of disagreements is notoriously obtuse. (It's "collateral estoppel" or "issue preclusion" in this instance.) The basic idea is simple enough:

- An issue in a case is identical to an issue that was already litigated in the past.
- That issue was actually resolved in the previous case, and necessarily so.
- The decision in the previous case was also final, and it was on the merits of that issue itself.
- The person who lost in the first case is the same person who is trying to relitigate the issue in the second case.

In this situation, the person who lost in the first case cannot try again in the second case. The issue is "precluded." *See Mills v. City of Covina*, 921 F.3d 1161, 1170 (9th Cir. 2019) (citing *Gikas v. Zolin*, 6 Cal. 4th 841, 849 (1993)). It's not hard to see why. Lawsuits must end eventually. Courts can't allow cases to go endlessly around and around. *See Lucido v. Superior Court*, 51 Cal. 3d 335, 343 (1990).

The United States Supreme Court has decided that these rules work just as well in cases about federal constitutional rights. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980). People are not generally entitled to an "unencumbered" or "unrestricted" chance to litigate their federal constitutional claims in a federal court, rather than in a state court. *Id.* at 103–04. If a person had

4

a "full and fair hearing" in a state court, then the state court's decision might be the final word. *Id.* at 101. More specifically, federal courts have said that a state court decision about probable cause might be the last word on that issue, too. *See Ayers v. City of Richmond*, 895 F.3d 1267, 1271 (9th Cir. 1990).

It should go without saying, however, that if the state court's decision was reversed on appeal or otherwise deprived of effect, then it cannot be the last word. *See Mills*, 921 F.3d at 1169–70 & n.2. The previous decision must be "sufficiently firm" before it can have any "conclusive effect." *Id.* at 1170 (quoting *People v. Cooper*, 149 Cal. App. 4th 500, 520 (2007)). It must "free from direct attack, . . . 'immune, as a practical matter, to reversal or amendment.'" *Id.* at 1169–70 (other alterations omitted) (quoting *Cooper*, 149 Cal. App. 4th at 520).

It does not appear that any court has decided whether a state court's pretrial probable cause decision in a criminal case is "sufficiently firm" when the case eventually ended in an acquittal and the plaintiff's effective exoneration, by virtue of a factual innocence finding under section 851.8 of the Penal Code. It is hard to see how such a pretrial decision could be preclusive. To repeat the state supreme court's opinion in *Adair*, quoted above, "the state should never have subjected [the defendant] to the compulsion of the criminal law—because no objective factors justified official action." 29 Cal. 4th at 905 (quoting *Scott M.*, 167 Cal. App. 3d at 700). The official records of the arrest itself are purged. *Id.* If a court has decided after trial that a defendant should never have been subjected to the compulsion of the criminal law, that no objective factors justified the official action, and that, as a result, the records of the defendant's arrest must be destroyed, then it would be almost Kafkaesque to say that some earlier pretrial decision—one based on an incomplete record—is actually the conclusive final word on the propriety of the arrest.

The defendants' argument to the contrary is not persuasive, though it begins reasonably enough. They point out correctly that a plaintiff cannot rely on his later exoneration to prove that an arresting officer *lacked* probable cause. That conclusion follows necessarily from the longstanding rule that an "officer who arrests someone with probable cause and in good faith is not liable for false arrest simply because the innocence of the suspect is later proved." *Trenouth*

5

*v. United States*, 764 F.2d 1305, 1307 (9th Cir. 1985) (alterations omitted) (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1966)).  The "issue" of innocence is different from "issue" of probable cause.  *See, e.g.*, *Deonarine v. Lopez*, No. 2:22-03353, 2023 WL 10555206, at *3 (C.D. Cal. Dec. 28, 2023), *report and recommendation adopted*, No. 2024 WL 1356657 (C.D. Cal. Mar. 28, 2024), *and aff'd*, No. 24-3665, 2025 WL 3187350 (9th Cir. Nov. 14, 2025).  But Diaz is not arguing now that his factual innocence affirmatively and conclusively establishes that the officers lacked probable cause.  Just the opposite: he is arguing that the state court's probable cause finding is *not* preclusive because it is neither final nor conclusive as a matter of California law.  It may be, in the end, that the officers had probable cause.  *See Adair*, 29 Cal. 4th at 905 n.4.  But perhaps they did not.  The state court's decision dictates neither result.

The defendants also argue that this court must ignore the state court's factual innocence order because it is inadmissible as evidence.  (*See* Doc. 48 at 3 (citing Cal. Pen. Code § 851.8(i)).)  This argument has two problems.  First, Diaz is not proposing to "admit" the state court's order into "evidence."  There is no jury.  The Court is not making any factual findings.  And more fundamentally, Diaz does not suggest that his plan is to show the state court's order to the jury.  He wants a chance to make his case to the jury using other evidence, such as his own testimony about what happened on the night of his arrest.

Second, most state-law rules about the evidence that can and cannot be admitted at trial are "procedural in nature."  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).  Federal procedural rules normally apply in federal courts, in this situation the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  *See id.* (citing *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995)).  A state's rules of evidence apply in a federal case only if they are either "intimately bound up with the state's substantive decision making" or "serve substantive state policies."  *Id.* (citations and quotation marks omitted).  The defendants have not demonstrated that section 851.8(i) meets this standard.  They do not address the issue at all.

## FOURTH AMENDMENT

The defendants also argue that it is clear the officers did not violate the Fourth Amendment, even when the evidence is taken in the light most favorable to Diaz.  (*See* Doc. 44-1

6

at 4–6, 7–9.)

The Fourth Amendment broadly prohibits all "unreasonable" seizures.  "There are two categories of police seizures under the Fourth Amendment: *Terry* stops and full-scale arrests." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020) (citing *Terry v. Ohio*, 392 U.S. 1, (1968)).

First, under *Terry v. Ohio*, an officer "may conduct a brief, investigative stop" if the officer has "reasonable suspicion" that the person "'is committing or has committed a criminal offense.'" *Id.* (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)).  "An officer cannot rely only upon generalizations that 'would cast suspicion on large segments of the law-abiding population.'" *Id.* (quoting *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006)). "'Seemingly innocuous behavior,' unless combined with other circumstances indicating criminality, does not justify a *Terry* stop." *Id.* (quoting *Manzo-Jurado*, 457 F.3d at 935).  The officer must "point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (quoting *Terry*, 392 U.S. at 21).

Second, "[a]n arrest must be supported by probable cause to believe that the person being arrested has committed a crime." *Reynaga Hernandez*, 969 F.3d at 938.  The officer must have "reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Id.* (quoting *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995)).  "Probable cause is more difficult to establish than reasonable suspicion." *Id.*  The officer must generally have both more information and more reliable information. *See Alabama v. White*, 496 U.S. 325, 330 (1990).  Both of these factors, "quantity and quality," are part of the "totality of the circumstances" that a court must take into account. *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Beyond these general rules, it is not possible to explain "precisely what 'reasonable suspicion' and 'probable cause' mean." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  They are not "finely-tuned standards." *Id.* at 696 (quoting *Gates*, 462 U.S. at 231).  "They are commonsense, nontechnical conceptions that

7

deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Gates*, 462 U.S. at 231).

When the evidence is taken in the light most favorable to Diaz's claims, and with the benefit of a few reasonable inferences—which, again, the Court must grant him at this point—it is possible that a factfinder could decide that the officers had neither reasonable suspicion nor probable cause.

As for reasonable suspicion, when McComb stopped Diaz, he knew only that there had been a call for service related to some sort of "domestic violence incident" at a house at the end of the cul-de-sac. (Doc. 44-4 at 2.)  He knew that Rivas was the "complaining witness," but he does not say whether he knew anything about what had happened, how many other people were involved, what they had done, what they looked like, whether any of them were leaving, whether they were driving, and if so, what kind of car. (*See id.*)  All he knew about Diaz was that he was driving in a car in the same cul-de-sac. (*See id.*)  This is the sort of generalized, "seemingly innocuous behavior" that cannot support a claim of "reasonable suspicion" because it would "cast suspicion on large segments of the law-abiding population." *Reynaga Hernandez*, 969 F.3d at 937 (citations and quotation marks omitted).

As for probable cause, McComb arrested Diaz based on a report or request by de Jong. (Doc. 44-4 at 2.)  McComb says only that de Jong "advised" him that there was probable cause. (*Id.*)  He does not say what else de Jong told him, what de Jong knew, or how he learned it. (*See id.*)  De Jong has not explained what he knew either, and the defendants have not cited any evidence showing what information de Jong had.  It is true, as the defendants argue, that if "one officer knows facts constituting reasonable suspicion or probable cause . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007).  But even then, someone must have "all of the necessary facts," even if he does not communicate those facts to others. *Id.*  The defendants have not cited evidence that could show de Jong or another person had all of the necessary facts at the time.

The defendants argue that "the arrest was substantiated by Sol Rivas's statements to

Officer Saelee." (Doc. 44-1 at 9.)  They do not cite any legal rules or cases in which any courts have held that an otherwise unreasonable arrest can become reasonable for purposes of the Fourth Amendment if the officers later come upon information that "substantiates" the arrest.  Courts have often repeated instead that probable cause "is determined at the time the arrest is made," not later. *Reynaga Hernandez*, 969 F.3d at 938.  But even if de Jong knew exactly what Saelee knew, there would be genuine disputes of fact to resolve.  "[O]fficers may not solely rely on the claim of a citizen witness that she was the victim of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses." *Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) (alteration omitted) (quoting *Arpin v. Santa Calara Valley Transp. Agency*, 261 F.3d 912, 915 (9th Cir. 2001)); *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)).  A visible injury on Rivas's arm might have helped to corroborate her allegations against Diaz.  On this record, however, it is impossible to say whether a reasonably prudent officer could have believed that Diaz had recently caused the marks that Saelee saw.

### CONCLUSION

The motion for partial summary judgment (Doc. 44) is **DENIED**. No later than June 29, 2026, counsel **SHALL** file a joint status conference report detailing whether the matter is ready for trial or, if not, why not. If it is ready for trial, they **SHALL** propose a trial date. They **SHALL** contact the Court's Courtroom Deputy Clerk to clear potential trial dates

IT IS SO ORDERED.

Dated:    **June 12, 2026**

_____
UNITED STATES DISTRICT JUDGE